Shirley WALITALO, Individually and Entities Similarly Situated, Walter A. Lytle, Jon Ketzler, Sharon Ketzler, Leon Steward, Carlan K. England, Charles M. Mangus, Peggy A. Mangus, William Randolph Warner, Karen G. Warner, Phyllis M. Boucher, Chephis J. Smith, M. Rhudene Smith, Maude Moore, Appellees,

v.

Lee IACOCCA, Chrysler Corporation, Poinsette Motors, Inc., Chrysler Credit Corporation, Houston–Taylor Motors Corporation, Inc., Jim Limbaugh Chrysler, Gallatin Chrysler–Plymouth–Dodge, Inc., Swift Dodge, Inc., Does # 1–20, Karp Motors, Inc., Moothart Chrysler Plymouth, Inc., Does # 1–50, Mitch Crawford's Holiday Motors Corporation, Crown–Dodge, Inc., Appellants,

v.

L.H. CARTER, doing business as L.H. Carter Company, Jan Shout, Mark Shout, Mary Hicks, Tommy Hicks, Diana Deatherage, Kenneth Deatherage, Susan Loffredo, Dorothy Wilson, Gorden Wilson, Arnold W. Parnes, Appellees,

v.

CHRYSLER CORPORATION, Appellant.

Barbara N. CHRZANOWSKI, Appellees,

Paul Q. Monier, Jane E. Monier, Plaintiffs,

James M. Hume, Appellees,

v.

RDS MANAGEMENT, d/b/a Shuman Motor Sales, Inc., Thompson Chrysler–Plymouth, Inc., National Bank of Detroit, Chrysler Corporation, Chrysler Credit Corporation, Rollings Chrysler, Jones Chrysler–Plymouth, Inc., Appellants,

v.

Jack THREADGILL, Plaintiff,

v.

CHRYSLER CORPORATION, Appellant.

Peggy JOHNSON, Appellee,

v.

OVERSEAS MILITARY SALES CORPORATION; Chrysler Corporation, Appellants.

Ken DUCKETT, Harold E. Horton, Craig Adler, Harvey J. Axelrod, Charles E. Bernd, Alex Bidniuk, R.J. Boggie, Roy Brown, Robert Dworkin, Cecil Ferguson, John W. Garner, Morton Gilbert, Frances Greene, A.B. Hayes, Ross Jones, Frank Lafazia, G.B. Lindsey, Kevin Messier, Marvin James Okray, Bobby Owen, Minnie Owen, James Shubnell, George Schrader, Mary Stevens, Dallas Thompson, Don F. Walker, Walter Gronek, Jr., Appellees,

v.

CHRYSLER CORPORATION, Appellant.

Nos. 91–2835, 91–2870 and 91–2885.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1992.

Decided July 7, 1992.

Charles A. Newman, St. Louis, Mo., argued, for appellants.

R. Stephen Griffis, Birmingham, Ala., for appellees.

Before WOLLMAN and MAGILL, Circuit Judges, and LONGSTAFF,* District Judge.

MAGILL, Circuit Judge.

Chrysler Corporation and other defendants appeal the district court's award of attorneys' fees to two attorneys. The district court appointed these attorneys to manage pretrial discovery on behalf of plaintiffs who had opted out of an odometer fraud class action and filed individual lawsuits.[1] When the discovery was nearly complete, the district court awarded the attorneys fees totalling 40% of the amount recovered by any plaintiff in excess of $500. The court also awarded them reim-

* THE HONORABLE RONALD E. LONGSTAFF, United States District Judge for the Southern District of Iowa, sitting by designation.

1. Appellants actually brought three separate appeals from the district court's order awarding attorneys' fees and expenses. These three appeals were consolidated for purposes of oral argument and are all resolved in this opinion. All three appeals involve essentially the same issues, but are separated based on different groups of plaintiffs. These groupings will be explained later in the opinion.

bursement of their expenses. In this appeal, appellants challenge the district court's award of attorneys' fees and expenses on various grounds. We affirm in part, reverse in part, and remand to the district court for action consistent with this opinion.

## I.

This appeal stems from Chrysler's past practice of test driving its automobiles prior to sale with their odometers disconnected pursuant to its "Overnight Evaluation Program." When this practice was discovered in 1987, Chrysler was criminally indicted for mail fraud, wire fraud, and odometer fraud. Chrysler pleaded *nolo contendere* and paid a $7.6 million fine. Shortly thereafter, various civil class actions were filed by plaintiffs who allegedly sustained damages when they purchased vehicles test-driven in this program. These class actions were consolidated in the Eastern District of Missouri. Soon afterwards, and before extensive discovery could begin, Chrysler entered a settlement agreement with class petitioners that required Chrysler to establish a fund in the amount of $16,375,000, which would provide each class member with a minimum payment of $500. In addition, each class member would receive extended warranties and free vehicle inspections. Before approving the settlement, the district court ordered class petitioners to notify all potential members of the class and obtain class certification. On August 24, 1988, 39,170 putative class members were notified of the status of the class action, the terms of the proposed settlement, and their right to opt out of the class. Approximately 735 persons, including the plaintiffs involved in this appeal, elected to opt out of the class. The district court subsequently certified the class and approved the proposed settlement agreement.[2]

This appeal involves only those persons who chose to opt out of the class action and bring an individual lawsuit. In total, approximately sixty-five individual lawsuits were brought against Chrysler in federal courts throughout the United States. Each of these cases contained a claim for violation of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1981–91 (1988) ("Odometer Act"), which prohibits a person from disconnecting an odometer with intent to change the number of miles indicated thereon and from operating a vehicle knowing that the odometer is disconnected. *Id.* §§ 1984, 1985. The Act includes an express private cause of action, with a provision for treble damages and shifting of attorneys' fees to defendants if the action is successful. *Id.* § 1989. On Chrysler's motion and to prevent duplication of discovery on common issues, the Judicial Panel on Multidistrict Litigation consolidated the individual cases in the Eastern District of Missouri for purposes of common pretrial proceedings and discovery.[3] *See* 28 U.S.C. § 1407 (1988).

Once cases have been consolidated, the Manual for Complex Litigation, Second, recommends that the district court "select and empower, by court order if necessary, one or more attorneys to act on behalf of other counsel and parties in handling particular aspects of the litigation." MCL 2d § 20.22 (1985). The district court followed this recommendation and ordered all the plaintiffs' attorneys to meet in St. Louis on January 20, 1989, and select from among themselves one attorney to act as lead counsel. The attorneys selected Charles Thompson and, on March 1, 1989, the court entered an order defining his duties as coordination of all pretrial proceedings, implementation of common discovery, and settlement negotiations. In addition, the court appointed David Purcell, the only St. Louis-based plaintiff's attorney, as liaison counsel. His duties were to distribute and manage the extensive documentation associated with the pretrial proceedings and discovery. After approximately nine

---

2. For a more thorough discussion of the history of this class action, see *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.,* 736 F.Supp. 1007, 1009–11 (E.D.Mo.1990).

3. Those cases originally filed in the Eastern District of Missouri were consolidated with the other cases by the district court rather than by the judicial panel.

months of performing his duties as liaison counsel, however, the district court removed Purcell from this position and assigned the duties to Thompson. This opinion refers to Thompson as lead counsel and to Purcell as liaison counsel.

Soon after their appointment, lead and liaison counsel attempted to establish a formula for calculating their attorneys' fees. The district court, however, failed to address their motions. The only up-front order the district court entered regarding lead and liaison counsel's fees provided:

All tag-along plaintiffs who execute a settlement agreement with defendants by April 5, 1989, will not be responsible for reimbursing lead counsel for attorneys' fees associated with this multi-district litigation.[4] However, plaintiffs' counsel for any tag-along action, which is settled subsequent to that date, will be responsible for compensating lead counsel in accordance with a method of payment approved by this Court.

Appellants' App. I at 249.[5]

Despite the absence of a court order governing their compensation, lead and liaison counsel commenced their duties. Through the course of two years, Thompson conducted extensive discovery, including taking approximately twenty-five depositions.[6] This discovery revealed a widespread scheme of Chrysler employees driving vehicles with disconnected odometers when and wherever they pleased so long as the vehicles were not driven out of state.

When a majority of the discovery was completed, the district court scheduled a number of the consolidated cases for trial on July 31, 1990. These cases never went to trial, however, because the plaintiffs settled by accepting Chrysler's offers of judgment pursuant to Federal Rule of Civil Procedure 68. Each offer of judgment provided for:

1. Payment of $4,500 to the given plaintiff (nine times the amount received by the class action plaintiffs);[7]

2. Payment of all costs described in Federal Rule of Civil Procedure 54(d) accrued by plaintiff to the date of settlement; and

3. Payment of reasonable attorneys' fees incurred by plaintiff to the date of settlement.

In total, twenty-seven plaintiffs accepted Chrysler's offer of judgment during the summer of 1990. Thompson represented almost all these plaintiffs as individual counsel in addition to his acting on their behalf as lead counsel.

Although these offers of judgment clearly specified that Chrysler would pay reasonable attorneys' fees for each plaintiff accepting an offer, the offers did not define the method of calculating attorneys' fees. Following the settlements, however, plaintiffs submitted a memorandum supporting their application for attorneys' fees to the district court which stated:

In response to Chrysler's offer to settle these cases the attorneys for the plaintiffs have agreed that the clients will net the entire $4,500.00 ($1,500.00 in the case of Mary Stevens) and that the attorneys for the settling plaintiffs will look strictly to the court for a determination of the appropriate reimbursement of costs and setting of fees.

Appellants' App. III at 702. This memorandum indicates that the plaintiffs intended the court to calculate their individual attorneys' fees as well as the fees of lead

---

**4.** Prior to April 5, 1989, a number of the consolidated cases settled. No party associated with these cases was assessed for lead and liaison counsel's fees and they are not involved in this appeal.

**5.** Because there are three appeals, appellants have filed three appendices. This opinion gives the appellants' appendix for each case a separate number: Appellants' Appendix I is from *Walitalo v. Iacocca,* Appellants' Appendix II is from *Chrzanowski v. Chrysler Corp.,* and Appel-

lants' Appendix III is from *Duckett v. Chrysler Corp.* Appellees have filed only one appendix.

**6.** Because of the early settlement in the class action and the *nolo contendere* plea in the criminal action, little discovery had been previously conducted.

**7.** One of the plaintiffs accepting an offer of judgment received $1500 instead of $4500 because it was shown that her vehicle was not involved in the Overnight Evaluation Program.

and liaison counsel attributable to the settling cases.

In addition to the twenty-seven "offer of judgment" cases discussed above, Chrysler also settled four other consolidated cases. These four cases were dismissed by stipulation pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii) rather than through an offer of judgment under Rule 68. Two of these "stipulated dismissal" cases settled in August 1989, soon after they were consolidated in the Eastern District of Missouri. The amount the plaintiffs received in these settlements has not been disclosed. Neither of these settlements specified who would pay for attorneys' fees. The other two "stipulated dismissal" cases settled in May and June of 1990. One of the plaintiffs settled for $9000 and the other settled for $11,500. Both settlements expressly provided that the plaintiff was responsible for all attorneys' fees, including those of lead and liaison counsel.

Although a large number of the consolidated cases had settled by late summer of 1990, neither lead counsel nor liaison counsel had received any compensation for their work.[8] More importantly, there was still no court order establishing the formula for calculating and apportioning the attorneys' fees of lead and liaison counsel. Finally, on May 7, 1991, nearly two years after the appointment of lead and liaison counsel, the district court entered an order addressing the plethora of outstanding motions regarding attorneys' fees. In this order, the district court rejected lead and liaison counsel's application for attorneys' fees based on a lodestar amount proportioned equally among the recovering plaintiffs. The court noted that "[t]he primary reason the Court rejects this approach is the *disproportionality* of fees to recovery thus far in these cases." Appellants' App. I at 559. Based on the district court's calculations, the lodestar approach would result in attorneys' fees for lead and liaison counsel of approxi-

mately $6600 per plaintiff when most of the settlements were for $4500.

The court further noted:

To the extent lead and former liaison counsel allowed their fees to reach such heights based on a belief that some of the tag-along cases would result in large damages awards, their expectations of success and payment are properly linked together by the use of a contingency basis for the payment of fees.

*Id.* at 560–61. Accordingly, the court awarded lead and liaison counsel fees based on the amount of each plaintiff's recovery. Specifically, the court awarded lead counsel a fee "equal to 30% of the amount by which each plaintiff's recovery exceeds $500, whether the recovery is by settlement or judgment, for each tag-along plaintiff whose case was not terminated on or before the April 5, 1989 deadline...." *Id.* at 562 (footnote omitted). Liaison counsel was awarded a fee equal to 10% of this same amount.

In a subsequent order issued on July 25, 1991, the district court clarified whether plaintiffs or defendants were liable for these fees. With respect to the two "stipulated dismissal" cases that did not address attorneys' fees in the settlement, the district court found that the plaintiffs must pay lead and liaison counsel's fees.[9] *Id.* at 634, 652. With respect to the other settled cases, the court stated:

[I]n all tag-along cases that have settled since the April 5, 1989 deadline, other than the *Hume* and *Monier* cases addressed above, fees in the amount prescribed by the May 7 order are to be paid to lead and former liaison counsel, *by the party responsible for the payment of counsel fees under the terms of the settlement agreement....*

*Id.* at 635 (emphasis added). Thus, pursuant to the July 25 order, Chrysler was responsible for payment of lead and liaison counsel's fees in each of the twenty-seven "offer of judgment" cases, and the plaintiff

---

8. Liaison counsel had received some minimum reimbursement for the expenses he incurred in performing his duties.

9. Appellants state in their brief that Chrysler is liable for the fees attributable to these cases. We do not know their basis for this assertion and assume that it is a misinterpretation of the court's orders.

was responsible for their fees in each of the four "stipulated dismissal" cases.

With respect to the fourteen consolidated cases still pending at the time of the July 25 order, the district court directed that "fees in the amount prescribed by the May 7 order are to be paid to lead and former liaison counsel ... *by the party responsible for the payment of counsel fees under the terms of the settlement or of the judgment.*" *Id.* (emphasis added). The district court further clarified the basis for calculating lead and liaison counsel's fees in cases where the plaintiff obtains a judgment as follows:

> In instances where the tag-along plaintiff is successful and is entitled to attorney's fees as part of his judgment, lead counsel's 30% contingency is to be calculated on the amount by which the sum of any nominal, actual and punitive damages exceeds $500, and paid by the responsible defendant in addition to the amount for which that defendant is liable under the judgment.

*Id.* at 638. Although the pending cases would be remanded to the court from which they were originally transferred for trial, the district court specifically stated that its order will apply to the remanded cases whether they are later settled or tried in the originating district. *Id.* at 561.

Finally, the district court noted that the award of attorneys' fees to lead and liaison counsel is "intended to compensate lead and former liaison counsel for their work in those particular court-appointed roles...." *Id.* at 639. The fee award does not affect the fee arrangements between plaintiffs and any attorney they independently retained. *Id.* at 641. Thus, the compensation awarded in the district court's orders is in addition to any compensation owed Thompson and Purcell for their work as individual counsel.

The district court's May 7 order and July 25 order also addressed reimbursement of lead and liaison counsel's expenses. In the May 7 order, the district court confirmed that lead and liaison counsel were entitled to reimbursement for reasonable expenses incurred in furtherance of their court-appointed duties, and directed them to submit a comprehensive itemized schedule of expenses. *Id.* at 563–65. The court then scrutinized the expenses, and, in its July 25 order, disallowed approximately 20% of the expenses as not necessary or applicable to their court-appointed duties. The court also apportioned the expenses among each plaintiff so that no plaintiff was responsible for expenses incurred after the date his or her case was closed. Finally, the court held that the plaintiff was liable for its share of expenses in all cases that were still pending or where a settlement did not shift the burden of costs to a defendant. Where a settlement requires a defendant to pay the settling plaintiff's costs, the court ordered the defendant to pay the expenses apportioned to that plaintiff. *Id.* at 643–49.

Chrysler and other defendants now appeal the district court's award of attorneys' fees and expenses to lead and liaison counsel. In fact, appellants have brought three separate appeals challenging the district court's award: the *Duckett* appeal consists of all cases that were settled through an offer of judgment; the *Chrzanowski* appeal consists of all cases that were settled through a stipulation of dismissal; and the *Walitalo* appeal consists of all cases still pending at the date the appeal was filed.[10] All three appeals involve essentially the same issues. With respect to attorneys' fees, appellants argue that the district court lacked authority to impose liability on a defendant, and alternatively, that the court erred in basing the award on a percentage of the plaintiffs' recovery rather than on a lodestar. With respect to expenses, appellants argue that the court lacked authority to impose liability on Chrysler for expenses that are not within

---

10. Subsequent to the filing of this appeal, ten of the pending cases settled and the district court dismissed them with prejudice pursuant to stipulations of dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii). Chrysler then filed a stipulation of dismissal with this court requesting dismissal of the ten settled cases from this appeal. We grant this motion. Fed.R.App.P. 42(b). The terms of these settlements will govern the compensation owed lead and liaison counsel for these cases.

the definition of "costs" under 28 U.S.C. § 1920 (1988). Finally, appellants argue that the district court erred in not holding an evidentiary hearing prior to making its award. We address each argument, as they apply to all three appeals, below.

## II.

### A. Attorneys' Fees

■ This court generally will not overturn a district court's fee award absent an abuse of discretion. If the district court has used improper standards or procedures in determining fees, however, we will reverse. *See Actors' Equity Ass'n v. American Dinner Theatre Inst.*, 802 F.2d 1038, 1042 (8th Cir.1986); *see also Court Awarded Attorney Fees*, Report of the Third Circuit Task Force (Arthur R. Miller, Reporter), 108 F.R.D. 237, 273 (Oct. 8, 1985).

Appellants' first argument challenging the award of attorneys' fees is that the district court lacked authority to impose liability for the fees on defendants. We reject this argument. The district court's orders make a defendant liable for a plaintiff's proportionate share of lead and liaison counsel's fees only in two situations: (1) the defendant expressly assumes liability for the plaintiff's attorneys' fees in a settlement agreement; or (2) a plaintiff goes to trial and obtains a judgment under a fee-shifting statute against the defendant.

■ It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefitting from their services.[11] MCL 2d § 20.223 (1985); *see also, e.g., In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1016 (5th Cir.1977). Nothing prevents defendants from assuming liability for these fees in a settlement agreement. In the "offer of judgment" cases, this is exactly what Chrysler did, and it cannot avoid its contractual obligation to pay

them. Chrysler knew that the plaintiffs would have to compensate lead and liaison counsel for their services and, in fact, conducted discovery into the amount of their fees. Accordingly, imposing liability for these fees on Chrysler fully comports with the settlements between plaintiffs and Chrysler.

■ Additionally, there is certainly no error in shifting liability for court-appointed counsel's fees to a defendant if the plaintiff obtains a judgment against it under a fee-shifting statute such as the Odometer Act. This is all that the district court's orders require. Contrary to appellants' assertions, the orders do not make any defendant liable for lead and liaison counsel's fees if the plaintiff recovers only under a pendent state law claim that does not allow the shifting of attorneys' fees. Rather, if this occurs, the plaintiff is liable for the fees. Furthermore, the district court did not err in specifying how the originating trial courts should calculate the amount of lead and liaison counsel's fees in those cases remanded for trial. Although, as discussed below, we do not agree with the formula the district court chose for calculating the fees, the district court appointed lead and liaison counsel and thus had authority to determine the amount of their compensation. *Cf. In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1019 (stating that the district court appointing lead counsel "was the only tribunal that could effectively handle the fee matter").

■ Appellants' second argument is that the district court erred in awarding fees based on a percentage of each plaintiff's recovery rather than on a lodestar—the amount of hours worked times a reasonable hourly rate. We agree. Although the lodestar methodology entails greater work by the district court, we believe that it is the only approach fair to all parties in-

---

**11.** Appellants' argument that the parties to a case can avoid liability for their share of court-appointed counsels' fees by filing a stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii) is completely without merit. If such a rule existed, a district court's power to appoint attorneys to act on behalf of other attorneys and parties in complex litigation would be meaningless. Attorneys would be unwilling to assume this position if the parties to the litigation could avoid compensating them simply by settling and filing a stipulation of dismissal.

volved. By allowing the district court to establish the total amount of the fee award, the lodestar approach ensures that lead and liaison counsel are neither over compensated nor under compensated for their court-appointed work. This is not true with the percentage-of-recovery award. Under the percentage-based award, as long as one of the consolidated cases remains pending, the total amount of lead and liaison counsel's compensation remains uncertain. More importantly, because the fee award is dependent on the amount of plaintiffs' total recovery and this amount is unknown, the possibility of over or under compensating lead and liaison counsel is high.

If one or more plaintiffs go to trial and obtain a judgment that includes a large punitive damage award, lead and liaison counsel would receive a windfall. For example, assuming one plaintiff recovers $1,000,500 in damages, lead counsel would be entitled to $300,000 and liaison counsel would be entitled to $100,000.[12] If the plaintiff's judgment is based on a violation of the Odometer Act, which contains a fee-shifting provision, this fee award would greatly increase the defendant's total liability. The defendant then would be liable for $1,000,500 in damages, $400,000 in attorneys' fees to lead and liaison counsel, and attorneys' fee to plaintiff's individual counsel. A fee award that gives court-appointed counsel a windfall and unfairly penalizes either plaintiffs or defendants does not constitute "fair reimbursement and compensation." See MCL 2d § 20.223 (1985).

On the other hand, if all the plaintiffs obtain only a small judgment or settlement, lead and liaison counsel may end up being under compensated for their services. Lead and liaison counsel originally submitted a lodestar-based request for attorneys' fees that equalled approximately $6600 per plaintiff. This amount is significantly greater than the per plaintiff amount payable under the court's orders to

date. A large number of the consolidated cases have settled for $4500. Under the court's orders, lead and liaison counsel will receive $1600 per plaintiff in each of these cases. Even under the largest settlement disclosed to this court, lead and liaison counsel are entitled to only $4400. If the remaining plaintiffs settle or obtain a judgment for a comparable amount, the district court's percentage-of-recovery method would result in a fee award far below the $6600 per plaintiff lodestar calculation. Although this lodestar calculation may seem disproportionate to the amount of recovery, this court has recognized that, in many Odometer Act cases, the amount of damage is so small that plaintiffs would have difficulty obtaining counsel unless the amount of the fee is proportionate to the work required, rather than the amount recovered. *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 726 (8th Cir.1978) (affirming attorneys' fee award of $14,000 in Odometer Act case with recovery of $3960); *see also Tusa v. Omaha Auto Auction, Inc.*, 712 F.2d 1248, 1254–55 (8th Cir.1983) (finding attorneys' fee award of $8000 proper in Odometer Act case with recovery of $1500); *Lindsey v. Anderson & Sons Auto Sales, Inc.*, 690 F.Supp. 1028, 1030 (N.D.Ga.1988) (awarding attorney's fee of $9728 in Odometer Act case with recovery of $1500). Accordingly, even assuming that lead and liaison counsel inflated their lodestar request with hours not spent on court-appointed duties, the percentage-of-recovery method could result in fees below what is arguably "fair reimbursement and compensation." See MCL 2d § 20.223 (1985).

Although, under the percentage-of-recovery award, lead and liaison counsel have the opportunity to offset the low fees from the settled cases with high fees from the pending cases, we do not believe that this game of chance is an appropriate basis for calculating court-appointed attorneys' fees. The probability that the percentage-of-recovery award will either under or over com-

---

**12.** These fees are, respectively, 30% and 10% of the amount that all damages exceed $500. Although $1,000,500 may seem like an unlikely recovery, in fact, a similar case tried in state court resulted in a jury verdict, including punitive damages, of over $1,000,000. *See Carpenter v. Chrysler,* No. 60379 (Mo.Ct.App.E.D.) (appeal from trial court order granting new trial currently pending).

pensate lead and liaison counsel is unacceptably high, especially when use of the lodestar methodology eliminates this risk. Therefore, we reverse the percentage-based award and remand to the district court for calculation of a lodestar award. This will entail determining the total lodestar amount for work performed by lead and liaison counsel in furtherance of their court-appointed duties, and then allocating the fee among the plaintiffs.[13] The district court's July 25 order will continue to govern whether a given plaintiff or a defendant is liable for that plaintiff's share of the fees.

■ Converting lead and liaison counsel's fees to a lodestar, however, does not eliminate all the problems with the district court's award. The district court's fee award is in addition to any compensation due plaintiffs' individual counsel. The fee arrangements between plaintiffs and their individual counsel are unaffected. Appellants' App. I at 639, 641. This does not create a problem if individual counsel is compensated on an hourly basis. The number of hours expended by individual counsel will reflect the fact that individual counsel did not have to perform the duties assumed by lead and liaison counsel. A problem does arise, however, if individual counsel entered a contingency agreement with his or her client on the assumption that individual counsel would perform all work associated with the case and that the agreed-upon fee would constitute the only fee for this work. Given that the appointment of lead and liaison counsel decreased the amount of work required of individual counsel, and that lead and liaison counsel are being separately compensated for this work, these contingency fee arrangements may no longer be reasonable. This is true whether it is the plaintiff or a defendant who is liable for the fees of plaintiffs' individual counsel. Accordingly, on re-

mand, we direct the district court to review the plaintiffs' fee arrangements with their individual counsel for reasonableness in light of their decreased responsibilities and the fee award to lead and liaison counsel. *International Travel Arrangers, Etc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1277 (8th Cir.) ("The court has the power and the responsibility to monitor contingency fee agreements for reasonableness."), *cert. denied*, 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 605 (1980); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 772–73 (9th Cir.1977) (decreasing individual counsel's fees to pay court-appointed counsel); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d at 1016 (same). In fact, in the "offer of judgment" cases in which Chrysler has agreed to pay "reasonable attorney fees," the record indicates that the parties intended the court to set the fee for individual counsel in addition to lead and liaison counsel.[14] Appellants' App. III at 702.

### B. Expenses

■ In addition to challenging the district court's award of attorneys' fees, appellants argue that the district court erred in its award of expense reimbursement to lead and liaison counsel. The court's July 25 order reimbursed lead and liaison counsel for all expenses reasonably related to their court-appointed duties, and apportioned these expenses on a per plaintiff basis. Additionally, it imposed liability for these expenses on plaintiffs except in those cases where Chrysler expressly agreed to pay "costs" in a settlement agreement.

We find no error in the district court's decision to reimburse lead and liaison counsel for all reasonable expenses incurred in furtherance of their court-appointed duties. The Manual for Complex Litigation, Second, clearly indicates that a court can order

---

**13.** Although we leave the calculation of the per plaintiff fee to the district court, we approve of the method used by the district court to calculate and allocate lead and liaison counsel's expenses.

**14.** The district court already has entered an order addressing the amount of reasonable at-

torneys' fees in one of the settled cases. This order directed Chrysler to pay $8,038.85 in attorney's fees for the work of one plaintiff's individual counsel. Appellant's App. III at 781. Thompson was not the individual counsel in this case.

fair reimbursement of expenses, and does not limit this reimbursement to "costs" as defined by 28 U.S.C. § 1920. MCL 2d § 20.223 (1985). We also find no abuse of discretion in the court's calculation of these expenses, or in the court's per plaintiff allocation of expenses.

■ We do believe, however, that the court erred in imposing liability on Chrysler for expenses not within the technical definition of "costs" in those cases where Chrysler agreed to pay "costs" in a settlement agreement. These settlement agreements specified that Chrysler would pay "all costs as described in Rule 54(d), Fed. R.Civ.P." The Supreme Court has held that the word "costs" in Federal Rule of Civil Procedure 54(d) is defined by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). The definition of "costs" under § 1920 is narrower than expenses. For purposes of this opinion, it is not necessary to describe what expenses constitute "costs" under this statute. Neither party disputes that certain of the expenses Chrysler is liable for under the court's order are not within this definition. By imposing liability on Chrysler for expenses not within the definition of "costs," the court impermissibly altered the parties' settlement agreements. *See Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir.1991) (district court possesses no discretion to alter a settlement agreement); *Freeman v. B & B Assocs.*, 790 F.2d 145, 151–52 (D.C.Cir.1986) (same). The district court had no other basis for shifting liability for the expenses to Chrysler. Accordingly, the court should have found Chrysler liable only for that portion of each settling plaintiff's share of expenses that is within the technical definition of "costs." Liability for the remainder of these plaintiffs' share of expenses remains with the respective plaintiff. We thus reverse this portion of the court's order and remand to the district court to correct this error.

#### C. Hearing

■ Finally, appellants argue that the district court erred in not holding an evi-

dentiary hearing prior to awarding attorneys' fees. In light of our decision to reverse this award and remand for calculation of a lodestar award, we need not address this argument. We note, however, that an evidentiary hearing is proper if contested issues of fact arise. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984); MCL 2d § 24.13 (1985).

### III.

In conclusion, we affirm the district court's apportionment of liability for lead and liaison counsel's fees between plaintiffs and defendants, but reverse the district court's award of attorneys' fees based on a percentage of each plaintiff's recovery and remand for calculation of a lodestar award. We also direct the district court to review the fee arrangements between plaintiffs and their individual counsel for reasonableness. Finally, we affirm the district court's award of expenses to lead and liaison counsel, but reverse that portion of the court's order imposing liability on Chrysler for expenses not within the definition of "costs" under 28 U.S.C. § 1920.