Norman WEISS, on behalf of himself and others similarly situated, Plaintiffs,

v.

MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant.

Bert M. BEZ, on behalf of himself and others similarly situated, Plaintiff,

v.

MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant.

Civ. A. No. 93–96.

United States District Court, D. New Jersey.

May 11, 1995.

Goldstein Till & Lite by Allyn Z. Lite, Newark, New Jersey, and Milberg Weiss Bershad Lynes & Lerach by Melvyn I. Weiss, Patricia M. Hynes, Robert A. Wallner, New York City, for Plaintiffs.

Ribis, Graham & Curtin by Jerome J. Graham, Jr., Morristown, New Jersey, for Defendant.

## OPINION

BISSELL, District Judge.

The applications presently before this Court arise out of the filing of two separate complaints requesting certification of a class against Mercedes–Benz of North America, Inc. ("Mercedes") on January 14, and 15, 1993. On May 24, 1993, an order consolidating *Weiss v. Mercedes* and *Bez v. Mercedes* for discovery purposes was entered. On June 14, 1993, both plaintiffs moved to amend their separate complaints.

The plaintiffs initially moved for class certification in August 1993. This motion as well as defendant's cross-motion were withdrawn as the plaintiffs requested leave of court to amend their complaint for a second time. This Court granted leave for the plaintiffs to file their second amended complaints on November 24, 1993.

The second amended complaints were filed on November 30, 1993 and moved to certify as a class:

all persons in the United States who purchased or leased any 1992 or 1993 Mercedes–Benz S class automobile.

(Second Am.Compl of Norman Weiss and Bert M. Bez (hereinafter "Compl.", ¶ 2).[1] As plaintiffs moved for class certification, defendant filed a cross-motion to dismiss the first cause of action in the second amended complaints. The first cause of action alleged that Mercedes violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Lanham Act"). (Compl., ¶ 25). This Court granted the cross-motion and dismissed the First Count in both actions. (Op. of Feb. 24, 1994). Mercedes then moved to dismiss both second amended complaints in their entirety on the ground that subject matter jurisdiction is absent.

The plaintiffs' second amended complaint, in their current form, seek relief for the named plaintiffs and the other members of the proposed class against Mercedes for violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.* (*Id.* at 3). The plaintiffs allege further for themselves and the class that Mercedes committed common law fraud, breached an expressed warranty, breached an implied warranty, and made negligent misrepresentations. (*Id.*)

Mercedes contended that this Court did not have subject matter jurisdiction to hear these claims since individual class members did not satisfy diversity jurisdiction's amount in controversy requirements. In a March 31, 1994 Order, Mercedes' motion to dismiss was denied. Subsequently, class certification was granted on April 28, 1994 pursuant to Rules 23(a) and (b)(3). In a letter accompanying the class certification Order, this Court stated that Mercedes might revisit the diversity

---

1. Aside from information concerning the individual plaintiffs' residences, the complaints of Weiss and Bez are identical and shall be treated as one document unless indicated by the citation.

issue after the class certification process had further evolved.

### FACTS

Plaintiffs Weiss and Bez both own 1992 500 SEL Mercedes–Benz automobiles. (Compl., ¶ 3). Norman Weiss is a resident of the State of Florida. (Weiss Compl., ¶ 3). He bought his 500 SEL from a Mercedes dealer in Pompano Beach, Florida in November 1991. (*Id.*, ¶ 4). Bert Bez is a resident of the State of Michigan. (Bez Compl., ¶ 3). Mr. Bez purchased his 500 SEL from a dealer in Lansing, Michigan. (Op. of Feb. 24, 1994 at 3). Defendant Mercedes is a corporation organized under Delaware law with its principal place of business in Montvale, New Jersey. (Compl., ¶ 4).

The 500 SEL is one of several models in Mercedes' S–Class of automobiles. (Op. of Feb. 24, 1994 at 4). The S–Class was introduced in model year 1992. (*Id.*) All of Mercedes' S–Class models retail for more than $50,000 apiece. (Compl., ¶ 4). Plaintiffs allege that all S–Class vehicles suffer from "a serious defect." (Op. of Feb. 24, 1994 at 4). The defect is alleged to be a tendency for the S–Class' steering system to vibrate or shimmy when the car is driven at speeds over 50 miles per hour and the tires on the car had been used for three to five thousand miles. (*Id.*)

The plaintiffs also alleged that Mercedes concealed this defect from future and previous purchasers even after it received complaints of "uneven and or rapid tire wear on all [S–Class] models," regardless of the tire brand. (*Id.*) The concealment is asserted to have occurred despite internal memoranda identifying the problem as being endemic to the S–Class. (*Id.*) The autos weight was seen as being "a big factor." (*Id.*)

Mercedes proffers that each vehicle in the S–Class differs in weight and is "equipped with [a] tire ... of varying size and rating." (*Id.*) Mercedes' warranty for S–Class vehicles specifically excludes the tires. (*Id.* at 5).

**2.** Thus, if an individual owns two cars that qualify as part of the class, that person would be

During the alleged concealment of the defect, the plaintiff proffers that Mercedes advertised:

[t]he new Mercedes Benz S–Class as nothing less than the car of a lifetime, with performance, comfort and safety features like no car before, and claimed that the automobiles were engineered like no other car in the world.[ ] [I]ts safety steering system features an impact-absorbing steering wheel and that its automobiles are the most dependable in America, with manufacturing tolerances somewhat finer than the width of a human hair.

(*Id.*)

### The Proposed Settlement

Once the class was certified, settlement discussions were commenced between the parties. Ultimately, a settlement was reached. Under the proposed settlement, Mercedes has agreed to issue certificates to each member of the class for each automobile owned.[2] As stated above, the class consists of people who purchased or leased a Mercedes S–Class automobile of the model years 1992 or 1993. Pursuant to the settlement, the value of the certificate varies according to the exact model and year of the car.

The following chart explains how much an individual car owner is due:

| 1992 Model | Immediate Value |
| --- | --- |
| 300SD | $2,400 |
| 300SE | $2,400 |
| 400SE | $3,000 |
| 500SEL | $4,200 |
| 600SEL | $5,700 |

| 1993 Model | Immediate Value |
| --- | --- |
| 300SD | $2,400 |
| 300SE | $2,400 |
| 400SEL | $3,000 |
| 500SEL | $4,200 |
| 500SEC | $4,200 |
| 600SEL | $5,700 |
| 600SEC | $5,700 |

The immediate value of the certificates issued to lessors and lessees of the automobiles are one-third (⅓) and two-thirds (⅔)

entitled to two separate certificates.

respectively, of the above-described amounts. Any member of the class, except for Mercedes–Benz Credit Corporation ("MBCC"), is allowed to redeem the certificate for a four-year period after the settlement date. Redemption will allow the holder to receive the certificate's immediate value, offsetting the cost of purchasing or leasing a new Mercedes–Benz S–Class (Series 140) or SL Class (Series 129) automobile. Use of this certificate will not interfere with any other discount being provided by Mercedes. These certificates are freely transferable.

A third option is available if the holder of the certificate decides not to buy or lease a new Mercedes during the four-year period, but remains in possession of the certificate. This is the cash redemption feature of the settlement agreement. Pursuant to the settlement agreement, the certificates can be redeemed for half their immediate value in cash starting three years after the settlement date. Cash redemption is available throughout the entire fourth year post-settlement.

This agreement restricts MBCC, as a member of the class, in its use of the certificates. MBCC must use all of its certificates for the benefit of non-Mercedes affiliated customers before the certificates expire. Any certificate not used within 36 months of issuance will be transferred to charitable or educational institutions designated by the parties and approved by the Court.

Moreover, Mercedes will be responsible for the administration of this entire program. During the four-year period, the defendant will also have to provide quarterly reports to class counsel. Moreover, all costs that result from the settlement, *i.e.*, class notice and counsel fees, are borne by Mercedes.

### ANALYSIS

#### I. The Settlement Agreement

■ Under the Federal Rules of Civil Procedure:

[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs.

Fed.R.Civ.P. 23(e). When making this discretionary decision, a district court must give comprehensive consideration to all relevant factors and undertake an independent evaluation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir.1974). In approving, a court has the fiduciary responsibility to ensure the settlement is fair and not the product of collusion, and that the class members' interests were represented. *In re Warner Communications Securities Litigation*, 798 F.2d 35, 37 (2d Cir.1986). The Third Circuit has enumerated certain factors to assist a district court in reaching its determination. They are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re General Motors Corp.*, 55 F.3d 768, 785 (3d Cir.1995); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975); *Grinnell*, 495 F.2d at 463. In essence, these elements require a district court to determine whether a class settlement is fair, adequate and reasonable. *In re Warner Communications Securities Litigation*, 798 F.2d at 37 (citing *Grinnell*, 495 F.2d at 463).

#### Complexity and Anticipated Duration of Litigation

■ This Court notes that when parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially

true in complex commercial litigation. For these reasons, courts have often stated that "a bad settlement is almost always better than a good trial." *In re Warner Communications Securities Litigation,* 618 F.Supp. 735, 740 (S.D.N.Y.1985), *aff'd,* 798 F.2d 35 (2d Cir.1986). This is not a bad settlement. Rather, it is the result of an arm's length negotiation between two very capable parties. Mercedes was prepared to contest this class action vigorously. Although some discovery had taken place, the remaining discovery required for full trial preparation would be very extensive and costly. Given the crowded state of this Court's calendars, the case would not be tried prior to 1997. It is not unrealistic to predict that, if fully litigated, the present class action would not be concluded before the end of this decade at which point the automobiles in question (whose residual value is an important consideration) would be seven or eight years old.

### Reaction of the Class

■ In this case, the number of potential class members who have opted out or opposed settlement is approximately 100. Over 30,000 class notices were sent out. Silence can be considered tacit consent to the settlement. *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1313 n. 15 (3d Cir.1993). A substantial silent consent weighs in favor of certification. Furthermore, the criticisms of the settlement did not uniformly challenge its adequacy. Some objectors stated that they had not had problems with the S–Class Mercedes and felt no compensation was due to class members.

### The Stage of the Proceeding and the Amount of Discovery Completed

This litigation, beginning in January 1993, was certified as a class action in April 1994. (Weiss Cert., ¶¶ 18, 48). In the course of representing the original plaintiffs and then the class, class counsel has taken two depositions[3] and submitted two separate sets of discovery requests. (*Id.,* ¶ 49). As a result of the discovery, thousands of documents were procured and examined. (*Id.,* ¶¶ 49–

52). The plaintiffs answered Mercedes' discovery requests and Messrs. Weiss and Bez had their depositions taken. (*Id.,* ¶ 53). Admittedly, the case is still in the early stages of discovery.

The Third Circuit has stated that a district court needs to be wary before approving a settlement of a class action in its early stages. *In re General Motors Corp.,* 55 F.3d at 814. The primary fear is that class counsel would obtain inadequate consideration without more information on the merits of the case. (*Id.* at 789). The court in *General Motors* also discussed the additional pressures a class member would feel in determining whether notice of a class settlement as opposed to notice of a class action represents a better alternative to litigating by himself. (*Id.*)

In the course of this discussion, the Third Circuit recognized that early settlements could maximize the value for class members while adhering to class action requirements. (*Id.* at 790–92). That court noted that a class member was better able to gauge his or her individual benefit to being a member of the class when a settlement offer accompanied the certification notice. (*Id.*). The court also stated that a proposed settlement does not foreclose a class member's opportunity to challenge the adequacy of the class representation. (*Id.*). The Third Circuit seemed to stress that to accomplish an early settlement of a class action, a district court must adhere to the strictures of Rule 23 of the Federal Rules of Civil Procedure in the course of certification and settlement. (*Id.* at 792–800). Absent proof of collusion, this will not prevent the certification of a settlement class. (*Id.* at 796–97; *In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 159 (4th Cir.1991)). In the case at bar, unlike *General Motors,* the class was fully certified and the class members were so advised when notice of the settlement was disseminated.

### The Risks of Establishing Liability and Damages and Therefore the Reasonableness of the Settlement

As discussed above, the risks surrounding a trial on the merits are always considerable.

---

**3.** The two depositions were Mr. Jeffery Miller, a Mercedes staff engineer, and Mr. Robert Jack, Pirelli Tire's Manager of Technical Operations.

Proof of liability in this matter is even more tenuous. In individual "lemon law" proceedings, finders of fact have determined that no defect is present. *Alden Corp. v. Mercedes Benz of North America, Inc.*, Case No. 92–0808/FTL (Fla. New Motor Arb Bd. March 8, 1993) (In a Lemon–Law proceeding involving an S–Class vehicle and a front shimmy, Mercedes prevailed); *see also Dearce v. Mercedes Benz of North America*, Case No. 93–0351/WPB (Fla.New Motor Arb Bd. Sept. 1, 1993) (Mercedes prevailed). Other courts have noted that risks concerning liability in motor vehicle defect cases are more pronounced "where [, like here,] no personal injury or death is present. . . ." *In re General Motors Corp.*, 846 F.Supp. 330, 335 (E.D.Pa.1993), *rev'd* 55 F.3d 768 (3d Cir. 1995). In addition, not all class members experienced the shimmy which is the alleged result of the defect asserted in this case. This further impaired the ability of the plaintiffs to prove a uniform design defect here.

As far as damages are concerned, Mercedes will likely submit proof that the S–Class cars at issue have had the same resale value as previous Mercedes. Such evidence, coupled with the complaint being a vibration in the steering wheel of a luxury automobile, might make it difficult for the plaintiffs to establish damages. Considering these risks and the fact that the settlement was reached as the result of arms-length negotiations by counsel prepared to try the case, the agreement is quite reasonable.

### Objections to the Settlement

The substantive objections and reason for potential class members to opt out came in two forms, either they believe nothing is wrong with the car or they state that the settlement is inadequate. For reasons stated above, this Court disagrees that the settlement is inadequate. Those who believe that their automobile is not defective have exercised the right not to partake in this litigation. *See Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 162 (S.D.Ohio 1992).

Separately there have been objections concerning an inadequate amount of time to examine the proposed settlement. The proposed settlement was mailed out 38 days prior to the final objection date and 55 days prior to the settlement hearing. Such a time period has been found to be sufficient for other class actions. *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374–75 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994). Moreover, the objectors who complained of inadequate time were, in one instance, provided with an opportunity to examine class counsel's files and, in another instance, received a letter answering more specific questions about the settlement. Complaints of inadequate time also need to be counter-balanced against the desire to deliver to class members the relief provided as soon as possible. Therefore, this Court believes that the time to object was adequate.

Another class member objects because he believes that the settlement should be amended to allow the Certificate Clearing Corporation ("CCC") to be the court-appointed market maker for the certificates. The certificates are already freely transferable. At present, any organization can create a market to trade the certificates. The ready marketability of the certificates also distinguishes the present settlement from the *General Motors* case. There is no reason for the Court to insert itself into such a marketing effort. CCC is free to take whatever steps it chooses to publicize that it seeks to make a market in the certificates.

A final objector, Ms. Sachs, suggests that this settlement will lead to the diminution in value of the automobile since the 1992–93 S–Class will be labeled defective. Stated differently, the objector contends that the diminution in value has not been factored into the resale market. She further contends that the lost value will exceed the value of the certificates. If this objector is arguing that the class might be better off with no settlement than bear the publicity which this settlement will produce, the Court determines otherwise. There is a tangible, monetary award to each participant in the settlement which outweighs any speculation about the effect of publicity.

### The Remaining Girsh Factors

Mercedes could withstand a greater judgment than one in the range of one hundred

million dollars. Hence this factor does not support the reasonableness of the settlement. The best possible recovery for diminished value of the 1992 and 1993 S–Class Mercedes' could exceed the value of the certificates either at face or if discounted for cash. However, recovery is by no means certain. Furthermore, the jurors in the diverse area from which they would be drawn, many of whom have much more serious financial concerns than the lack of a uniformly smooth ride in a $75,000 luxury car, might well be unsympathetic with the alleged plight of the class plaintiffs. Nominal or minimal damages were real possibilities in a jury verdict. Thus, whether considered from the perspective of either the best possible recovery or the attendant risks of litigation, the settlement fund and configuration in this case is fair, adequate and reasonable.

### Further Reflections Upon In re General Motors

In *In re General Motors*, the settlement for the proposed class, which included individual truck owners as well as persons owning fleets (upwards of 1,000 vehicles); provided the following:

The present owner of the vehicle would receive

(1) Either a coupon valued at $1,000 which could be used to purchase a new G.M.C. or Chevrolet light truck within 15 months of the coupon's receipt. The coupon being transferable to a family member or with the title of the truck and usable with other G.M. purchase incentives.

(2) Or, upon a notarized request, a $500 coupon, good for 15 months, to purchase a full sized truck. The coupon being transferable to 3rd parties. This coupon may not be used with other G.M. purchase incentives.

Plaintiffs' counsel and the defendant valued the settlement between $1.98 billion and $2.18 billion. This settlement only addressed economic loss and not damages as the result of injury or death. (*In re General Motors*, 55 F.3d at 780–81).

Recognizing that settlement classes are judicial creations and not included within the framework of Rule 23, the Third Circuit determined that as a general rule they are valid. In that specific case, the Court of Appeals determined that the settlement was not fair and adequate. Specifically, the Opinion states that the district court abused its discretion when it relied on the class counsel's representation of the settlement's value, overestimated the risk of bringing a class action and establishing the liabilities, and misinterpreted the reaction of the class. Accordingly, the Third Circuit remanded the matter to the district court.[4]

In making its decision, the Third Circuit had three primary concerns. The first was the district court's failure to adhere to Rule 23 requirements. The others are the adequacy of representation and the adequacy of the settlement. For the reasons discussed above, this Court has found that the settlement and representation in the case at bar are adequate.

Unlike the *General Motors* settlement, the class in this matter will have the option either to exercise the certificate or to receive 50% in cash three years from the settlement date. Those who use the certificates for credit upon the acquisition of a new Mercedes have four years to do so. No one is rushed to exercise an option. No one (such as Chevy truck fleet owners) will be frozen out by an unreasonably short exercise period.

Moreover, the class was certified before settlement negotiations were initiated. This factor plus the active litigation before settlement convinces the Court that there is no collusion here. No one in the class is likely to be priced out of the market should he seek to exercise the certificate (with or without trading-in his present 1992 or 1993 S–Class vehicle). Necessarily, the members of the class are sophisticated, affluent purchasers of luxury automobiles who can make their own decisions here without being limited in those choices by the terms of the settlement.

---

4. This Court has purposely delayed the release of this Opinion in order to give any party who wished the opportunity to comment on the settlement in light of the Third Circuit's *In re General* *Motors Corp.* decision. The only response came in a letter from the class counsel stating that the decision did not affect this settlement.

Finally, the Court does not find that the use of the settlement certificates is a marketing tool to enforce future Mercedes sales. The publicity from the settlement will have as much of an adverse effect upon Mercedes' reputation as any potential offsetting enhancement of sales through use of the certificates. Furthermore, because the certificates are marketable and have a substantial cash value, the class members surely feel no compulsion to purchase another Mercedes and they are financially capable of buying a comparable vehicle from another manufacturer should they choose to do so. This Court has undertaken its own valuation of the settlement (*see infra*) and determines that it is fair and adequate. *See In re General Motors*, 55 F.3d at 806–08.

## II. Legal Fees

■ Class counsel seeks a counsel fee of $15,000,000 regarding this litigation. This money is excluded from the $100 million fund set up to compensate the class and will be provided by Mercedes. Counsel contends that their fee is 13% of the total amount of the settlement, $115 million (fund + fees), and therefore reasonable. (Weiss Aff., ¶ 66). They base this assertion on the result they have obtained for the class and the risks involved in taking the matter on a contingent basis. (Weiss Aff., ¶ 77).

■ When determining a fee for a class' counsel, a court needs to consider whether the amount is fair, adequate and reasonable. *In re Warner Communications Securities Litigation*, 798 F.2d at 37. In doing so, the Court needs to examine the amount recovered. The Court determines that a percentage of the value of the settlement to the class is the appropriate method for calculating counsel fees here. While the alleged immediate value of the settlement is $100 million, the certificates are also worth $50 million dollars three years from the settlement date. Assuming a 6% depreciation rate, $50 million dollars in 1998 is worth $41,980,964.15 in today's dollars. That would be the approxi-

mate value of the settlement if the settlement certificates were for cash only, and not redeemable until 1998. However, the ability to employ these certificates at face value in the purchase of another Mercedes at any time during the next four years accords to these certificates a greater value than $41,000,000. While precise calculations of such present value are not possible, the Court believes that a reasonable estimate of a present market value of the overall settlement is $75,-000,000.[5] A 15% counsel fee on that sum is $11,250,000 which the Court determines is fair and reasonable in all respects.

### CONCLUSION

In light of the foregoing, the settlement agreement is confirmed, and class counsel is awarded a counsel fee of $11,250,000.

### ORDER

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 11th day of May, 1995,

**ORDERED** that the settlement agreement between the parties be and it hereby is confirmed; and it is further

**ORDERED** that counsel fees in the sum of $11,250,000 be awarded to plaintiffs' counsel.

---

5. This is an approximation of the value to the class, if one of the optional uses of the certificates is exercised. Should a class member either forget or choose not to use his certificate, that

would diminish the financial impact upon Mercedes, but not the present value of the settlement to the class.