**In Re: MARION MERRELL DOW INC., SECURITIES LITIGATION.**

No. 92–0609–CV–W–6.

United States District Court, W.D. Missouri.

May 15, 1997.

Alvin D. Shapiro, Shapiro & Manson, P.C., Kansas City, MO, I. Stephen Rabin, Rabin & Peckel L.L.P., New York, NY, Marian P. Rosner, Wolf Popper L.L.P., New York, NY, Michael W. Thompson, Mitchell, Kristl & Lieber, P.C., Kansas City, MO, Sheldon L. Albert, Barrack, Rodos & Bacine, Philadelphia, PA, for Plaintiffs.

Edward R. Spalty, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Joseph M. Rebein, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Richard L. Jacobson, Fulbright & Jaworski L.L.P., Washington, DC, William O. Purcell, Kirkpatrick & Lockhart L.L.P., New York, NY, for Defendants.

### MEMORANDUM AND ORDER

SACHS, District Judge.

Investors in this class-action litigation have succeeded in obtaining an approved settlement of their security law violation claims. The remaining issue is awarding of attorneys' fees. The settlement sum of $13,750,-000 has been placed in escrow for a year, so that the fund now exceeds $14.4 million. On May 1, 1997, the court held a fairness hearing, which was uncontested, and approved the settlement agreement. Expense allowances of almost $960,000 have been authorized in this strongly contested litigation, where settlement was reached after much discovery, ruling on significant motions, but prior to submission by defendants of motions for summary judgment.

A publicized request for one-third of the gross settlement sum as attorneys' fees has not been resisted, formally or informally. Plaintiffs' counsel contend that such an award would represent a multiplier of only 1.2 on a "lodestar" recovery (hours expended times normal fees). The numbers are very large, however—the request totals $4,616,205 and the claimed hourly rates for experienced East Coast security law litigators range up to $495. The lawyers claiming sums exceeding $400,000 each currently charge, according to affidavits, $330, $350, $375 and $470 per hour.[1]

The court has a significant obligation to "monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function...." "Court Awarded Attorney Fees," Report of the Third Circuit Task Force, 108 F.R.D. 237, 255 (1985), cited by the Eighth Circuit in *Walitalo v. Iacocca,* 968 F.2d 741, 747 (1992).

Because *Walitalo* holds that the district court erred in awarding fees based on a percentage of recovery rather than on a lodestar, the first issue is whether I should look to the lodestar or the percentage request as the principal approach to making an award. The unique factors in *Walitalo,* which need not be recited, convince me that the Circuit does not necessarily prefer lodestar recoveries to percentage recoveries in cases awarding fees from a common fund, as distinguished from fees awarded in fee-shifting cases. A percentage allowance is favored by the Third Circuit Task Force and has become generally used in Fund–in–Court cases. 108 F.R.D. at 255; *Gottlieb v. Barry,* 43 F.3d 474, 482–3 (10th Cir.1994); *In re Catfish Antitrust Litigation,* 939 F.Supp. 493, 503 (N.D.Miss.1996) (reviewing cases). In several comparable district court cases in this Circuit, a percentage allowance method has been used in awarding fees. *See, e.g., In re Chrysler Motors Corp. Overnight Evaluation Program Litigation,* 736 F.Supp. 1007, 1009 (E.D.Mo.1990).

In Judge Nangle's case, cited above, the percentage allowed was only 17.5%, where the class had been notified of a 20% upper limit on fees. 736 F.Supp. at 1016. A lodestar recovery would have been roughly 10%,

---

1. Current charges are being used to avoid the complication of whether interest should be calculated on delayed payments.

and was thus significantly enhanced by the judge.[2] The Ninth Circuit has estimated that ordinary fee awards range from 20% to 30%, with 25% being used as a "bench mark." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). It is clear, however, that factors such as the size of the fund, the stage of litigation when settled, and lodestar comparisons frequently cause major departures from any such "typical" percentage award.

One of the most recent district court cases is of interest. In *In re The Prudential Insurance Company of America Sales Practices Litigation*, 962 F.Supp. 572 (D.N.J. 1997), there was an agreed fee award not to exceed $90 million, said to represent 4.5% of the total fund. The district court, however, awarded 11% of what it called the "minimum fund," evaluated at $410 million, and also 5% of a possible "future fund." The average hourly rate achieved was almost $575 per hour, 2.55 times the lodestar, but the court reserved the possibility that further recoveries might raise the average rate to more than $1,100 per hour, The court noted a prior allowance in New Jersey, affirmed without opinion, resulting in an average hourly rate of $2,779.63. *Weiss v. Mercedes–Benz of N. Am., Inc.*, 899 F.Supp. 1297, 1304 (D.N.J. 1995), representing 9.3 times the lodestar. For another hefty award *see In re Immunex Securities Litigation*, 864 F.Supp. 142 (W.D.Wash.1994), where 30% of a $13 million recovery was allowed as reasonable, where the lodestar was effectively multiplied by 1.6 for risk. *Immunex* is of particular interest because the recovery and the award made bear rather close comparison with that sought in the present case.

Another significant recent decision is *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 819–22 (3rd Cir.1995), *cert. denied.*, —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), where the court vacated a $9.5 million fee award, observing that the simple lodestar result would have been $3.1 million—but favored use of a percentage award from the fund on remand.

Based on the foregoing and on subsequent filings by counsel on May 12, the requested award is not strikingly out of line with current allowances in some comparable major cases, where settlements exceed $10 million. The fee request is also not notably excessive, based on comparison with a lodestar recovery. I do confess some discomfort with approving hourly rates considerably exceeding $200. In a recent survey by the Missouri Bar, fewer than 5% of counsel reported rates exceeding $200 per hour, and the survey suggested that hourly charges in this State tend to range from $91 to $130 for both office work and trial work.

It may be assumed, from the materials before the court, that I am dealing with lawyers whose qualifications and experience in some instances would be within the top 5% of the plaintiffs' bar on the East Coast. In fee-shifting cases, however, there is direction from the Circuit that trial judges should be wary of imposing fees that are out of line with the charges that would be made by local counsel who are competent to prosecute similar cases. *See, e.g., Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir.1982). I do not doubt the capability of some local attorneys to handle cases of this nature. It is improbable, however, that the regional fee limitation applies in distributing a common fund, where the clients' have chosen the counsel whose fees are in contention.[3] Nevertheless, this consideration does cast doubt on using claims that are purportedly sound for conventional lodestar analysis. It would seem that the rates are inflated by roughly one-third to one-half, using local community rates, and the award of the requested lodestar, without enhancement, would thus represent a generous result.[4]

2. Liability was easier to establish than here, because the civil litigation followed successful criminal prosecution.

3. *Compare Gottlieb v. Barry*, 43 F.3d 474, 485 n. 8 (10th Cir.1994) (applying nonlocal rates, but failing to distinguish between fee-shifting cases and common fund cases).

4. I confess a sense of unreality in lawyers' assertion of an hourly charging rate when apparently this type of litigation is almost always undertaken on contingent fees. While I have not been

I will use local practice in applying a percentage fee to the *gross* recovery, rather than the net recovery of the investors. There are judges who have refined the calculation to a percentage of net recovery, but the survey noted before indicates that about two-thirds of the local legal community still uses gross recoveries for calculating contingent fees, and this may apply nationwide, as far as I am aware.

Another complication in analysis is posed by counsel's contention that at least a modest lodestar enhancement is justified because of the risks involved in taking this litigation on a contingency. As noted, there is case-law supporting the claim, and even allowing much more dramatic enhancements than are requested here. Like it or not, however, I believe lodestar enhancement because of contingency is barred by the majority view of the Supreme Court in *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 2643–44, 120 L.Ed.2d 449 (1992). It does seem true that the *Dague* restriction is inapplicable in a common fund situation. *Adams v. Zimmerman*, 73 F.3d 1164, 1178 n. 18 (1st Cir.1996). This means to me, however, simply that I am entitled to use a percentage allowance that substantially exceeds the lodestar. To enhance the lodestar to support the percentage request would seem, however, to be a circular way of avoiding *Dague.*

My conclusion is that a 28% award would be fair to the attorneys and their clients in this case, yielding fees quite close to the lodestar claimed and at the same time remaining within the range that the Ninth Circuit has deemed conventional, when judges are called upon to make awards out of common funds.

It is therefore ORDERED that:

a. Petitioning counsel are awarded $3,850,000 as attorneys' fees, plus interest as earned by the Settlement Fund since May 10, 1996; and

b. The sums awarded to the Joint Petitioners shall be paid to the law firms of Barrack, Rodos & Bacine, Rabin & Peckel LLP and Wolf Popper LLP, co-lead counsel for plaintiffs and the Class in the case, which firms shall have the authority to distribute and allocate the sums among the various petitioning counsel based on the relative contributions of the firms to the litigation, as set forth by affidavit.

This court further finds that there is no just reason for delay in determining this Order to be a final Order, pursuant to Rule 54(b), F.R. Civ. P., and therefore, expressly directs the entry of judgment in accordance with the terms of this Order and the Order filed May 2, 1997.

close enough to the work to form a distinct impression, it also seems almost inevitable that

there would be some inefficient use of time resulting from the work of a group of law offices.