# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 15-2690

———————————————

In re: Genetically Modified Rice Litigation

------------------------------

Riceland Foods, Inc.,

*Plaintiff - Appellee*,

Don M. Downing and Adam J. Levitt, Plaintiffs' Co-Lead Counsel and
Co-Trustees of the Genetically Modified Rice Common Benefit Fund,

*Movant - Appellee,*

v.

Bayer Cropscience US; Bayer CropScience LP; Bayer AG; Bayer CropScience
Holding, Inc.; Bayer Corporation; Bayer BioScience NV; Bayer CropScience AG;
Bayer CropScience Inc.; Bayer CropScience LLC; Bayer CropScience Holding SA,

*Defendants - Appellants*.

———————————————

No. 15-2693

———————————————

In re: Genetically Modified Rice Litigation

------------------------------

Riceland Foods, Inc.,

*Plaintiff - Appellant*,

v.

Bayer Cropscience US; Bayer CropScience LP; Bayer AG; Bayer CropScience Holding, Inc.; Bayer Corporation; Bayer BioScience NV; Bayer CropScience AG; Bayer CropScience Inc.; Bayer CropScience LLC; Bayer CropScience Holding SA,

*Defendants*,


Don M. Downing and Adam J. Levitt, Plaintiffs' Co-Lead Counsel and Co-Trustees of the Genetically Modified Rice Common Benefit Fund

*Movant - Appellee.*

_____

No. 15-2850

_____

In re: Genetically Modified Rice Litigation

-------------------------------

Riceland Foods, Inc.,

*Plaintiff - Appellee*,

v.

Bayer AG; Bayer CropScience AG; Bayer BioScience NV; Bayer CropScience LP; Bayer CropScience LLC; Bayer CropScience Holding, Inc.; Bayer CropScience Inc.; Bayer Corporation,

*Defendants - Appellants*.

-2-

_____

No. 15-2893

_____

In re: Genetically Modified Rice Litigation

------------------------------

Riceland Foods, Inc.,

*Plaintiff - Appellant*,

v.

Bayer AG; Bayer CropScience AG; Bayer BioScience NV; Bayer CropScience LP; Bayer CropScience LLC; Bayer CropScience Holding, Inc.; Bayer CropScience Inc.; Bayer Corporation,

*Defendants - Appellees*.

_____

No. 15-3245

_____

In re: Genetically Modified Rice Litigation

------------------------------

Riceland Foods, Inc.,

*Plaintiff - Appellee*,

Don M. Downing and Adam J. Levitt, Plaintiffs' Co-Lead Counsel and Co-Trustees of the Genetically Modified Rice Common Benefit Fund,

*Movant - Appellant*,

v.

-3-

Bayer Cropscience US; Bayer CropScience LP; Bayer AG; Bayer CropScience Holding, Inc.; Bayer Corporation; Bayer BioScience NV; Bayer CropScience AG; Bayer CropScience Inc.; Bayer CropScience LLC; Bayer CropScience Holding SA,

*Defendants - Appellees.*

————————

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

————————

Submitted: April 12, 2016
Filed: August 31, 2016

————————

Before COLLOTON and SHEPHERD, Circuit Judges, and BOUGH,[1] District Judge.

————————

COLLOTON, Circuit Judge.

Bayer AG, along with several of its corporate subsidiaries, and Riceland, Inc., appeal an order of the district court[2] requiring Bayer to cause the deposit of a portion of a settlement between Bayer and Riceland into a common-benefit trust fund. This fund was established to compensate attorneys leading the multidistrict litigation ("MDL") concerning Bayer's LibertyLink LL601 genetically modified rice. We addressed challenges to the creation of the fund in *In re Genetically Modified Rice Litigation* (*Rice I*), 764 F.3d 864, 870-71, 873-74 (8th Cir. 2014).

————————

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-4-

Bayer and Riceland argue that because their settlement was the product of negotiations following a state-court judgment, the district court lacked jurisdiction to order Bayer to cause a percentage of the settlement to be deposited into the fund. As the district court explained, however, Bayer and Riceland were parties to several federal cases in the consolidated federal litigation, and their settlement resolved the very claims asserted by Riceland in those federal cases. We conclude that the district court properly ordered Bayer to hold back a portion of the Bayer-Riceland settlement, and we therefore affirm the judgment.

I.

In 2006, Bayer reported to federal regulators that trace amounts of its experimental LL601 genetically modified rice, which was not approved for human consumption, had contaminated the commercial long-grain rice supply in the United States. In response to this disclosure, several major importers of U.S. rice—including Japan, the European Union, and Mexico—banned the import of U.S. long-grain rice or imposed stringent testing requirements. Rice commodity prices and export volume dropped precipitously following the disclosure. Although LL601 was retroactively approved for human consumption, the contamination caused significant economic loss to the domestic rice industry.

In hundreds of individual lawsuits, approximately seven thousand rice growers ("producers") and others in the rice industry ("non-producers") sued Bayer and related entities for losses suffered as a result of the LL601 contamination. Approximately three hundred of those lawsuits, comprising the individual claims of approximately five thousand plaintiffs, were filed in or removed to federal court; the remaining plaintiffs proceeded in state court. The Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred the federal cases to the United States District Court for the Eastern District of Missouri for pretrial proceedings. *In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351 (J.P.M.L. 2006).

In April 2007, the district court appointed a leadership group of plaintiffs' attorneys to coordinate the centralized multidistrict proceedings. Don Downing and Adam Levitt, appellees and cross-appellants here, were named co-lead counsel for this coordinated effort. Over the course of the litigation, the leadership group took over one hundred depositions, managed extensive discovery, and conducted several bellwether trials; evidence generated from each of these efforts was made available to all plaintiffs in state and federal court. In addition, the leadership group prevailed on several motions for summary judgment. A special master determined that the leadership group and other lawyers engaged by the leadership group invested over 100,000 hours for the common benefit of all plaintiffs.

To compensate lawyers who would contribute to this collective effort, the district court ordered the creation of a common-benefit trust fund ("Common Benefit Order"). This order required Bayer to hold back and deposit into the fund a percentage of all recoveries in the federal litigation: eleven percent of recoveries by producer plaintiffs, ten percent of recoveries by non-producer plaintiffs, and nine percent of recoveries by European non-producer plaintiffs. The district court "reluctantly" determined that it lacked jurisdiction to apply the Common Benefit Order to "settlements and judgments related to cases pending in state courts," even though the state-court plaintiffs would be "unjustly enriched," because plaintiffs in those cases were not parties before the district court. As a result, the court limited the scope of its order to gross recoveries "related to each federal genetically modified rice case." In *Rice I*, we affirmed the district court's conclusion that it lacked jurisdiction over state-court plaintiffs, holding that an MDL judge "does not have the power to order parties in cases not before it to contribute to the Fund." 764 F.3d at 874.

Riceland, an Arkansas rice-milling and wholesaling cooperative, was named as a defendant in over two hundred LL601-related lawsuits; in many cases, Riceland was a co-defendant with Bayer. But, in the words of Riceland's attorney, the company "quickly pivoted and was immediately at the forefront of . . . the LLRICE

-6-

litigation as a plaintiff against Bayer." Riceland filed a complaint and multiple cross-claims and third-party complaints against Bayer, claiming that Bayer was negligent in failing to prevent its experimental rice from contaminating the U.S. long-grain rice supply. Riceland asserted claims against Bayer in at least seven cases that were part of the consolidated multidistrict proceedings.

Two cases in which Riceland asserted claims against Bayer are relevant to this appeal. In *Meins v. Bayer AG*, No. CV-2008-108 (Ark. Cir. Ct. Arkansas Cty. filed Aug. 7, 2008), rice farmers and rice-farming entities sued Bayer and Riceland over the LL601 contamination. Riceland filed a cross-claim against Bayer in *Meins*; on the same day, Riceland filed an identical, original complaint against Bayer in federal court. *Riceland Foods, Inc. v. Bayer AG*, No. 3:09-cv-00008-BSM (E.D. Ark. filed Jan. 20, 2009), *transferred*, No. 4:09-cv-00433-CDP (E.D. Mo. dismissed Aug. 3, 2015).

The plaintiffs in *Meins* settled their claims against Bayer, leaving only Riceland's cross-claims for trial. A jury entered a verdict in favor of Riceland and awarded the company $11.83 million in compensatory damages and $125 million in punitive damages. The trial court, applying Arkansas's statutory cap on punitive damages, reduced the punitive damages award to $1,073,292.

Riceland appealed the remittitur in *Meins*. After Riceland filed its notice of appeal, the Arkansas Supreme Court held in a separate LL601 case that the limit on punitive damages violated the state constitution. *Bayer CropScience LP v. Schafer*, 385 S.W.3d 822, 829-32 (Ark. 2011). In its opening brief to the state supreme court, Riceland argued that *Schafer* required the court to reinstate the full punitive damage award; Bayer cross-appealed, arguing that the jury's finding that Riceland was thirty percent at fault barred the company from recovering damages. On the punitive damages issue, Bayer conceded that *Schafer* applied, but argued that if the verdict

stood, then remand was appropriate to determine whether the $125 million award violated the state or federal constitution.

After briefing was complete in the *Meins* appeal, Riceland and Bayer agreed to settle Riceland's claims. Under the settlement agreement, Bayer agreed to pay Riceland $92 million and to indemnify Riceland against any claims arising out of the LL601 litigation. In exchange, Riceland released "any and all claims . . . growing or arising out of the presence in the United States rice supply of Bayer GM Rice." The release clause stated: "This specifically includes, but is not limited to, the claims brought in the *Scott Meins, et al. v. Bayer AG, et al.* case." The settlement also required Riceland to dismiss with prejudice its claim in *Meins*, but did not specifically mention Riceland's pending federal lawsuit. Neither Bayer nor Riceland moved to dismiss Riceland's federal complaint. Bayer represents to the court that it has paid the $92 million due to Riceland under the settlement.

The plaintiffs' leadership group attempted, on three separate occasions, to require Riceland to contribute to the common-benefit fund. On the eve of the *Meins* trial, the leadership lawyers moved in the district court for an order applying the Common Benefit Order to any recovery Riceland obtained in the state-court trial. The district court denied the motion, again concluding that although Riceland received a substantial benefit from the leadership group's work, the court lacked jurisdiction over the state-court case. The leadership group also moved to intervene in *Meins* to have the state trial court determine whether Riceland should be required to abide by the Common Benefit Order; the motion to intervene was denied.

After Bayer and Riceland reached their settlement, the leadership group moved to apply the Common Benefit Order to Riceland's recovery under the settlement. Because Riceland was a non-producer plaintiff and a party in the coordinated federal proceedings, the leadership group argued that Riceland was bound by the Common Benefit Order to contribute ten percent of the settlement to the common-benefit fund.

-8-

The district court agreed, concluding that the agreement's release of "any and all claims"—including those asserted in Riceland's federal lawsuit—gave the court jurisdiction to order funds to be held back from the settlement. The court thus ordered Bayer to "cause to be deposited" $9.2 million into the common-benefit fund. The court entered a separate order dismissing Riceland's federal lawsuit based on its finding that the settlement resolved the parties' dispute. Bayer and Riceland appeal the application of the Common Benefit Order to the settlement.

Two other actions involving the subject matter of this appeal are currently pending. In *Downing v. Riceland Foods, Inc.*, No. 4:13-cv-00321-CDP (E.D. Mo. filed Feb. 20, 2013), the leadership group has sued Riceland for unjust enrichment and *quantum meruit* based on the services rendered by the leadership group. The district court stayed the suit pending resolution of this appeal. Riceland has also sued Bayer in Arkansas state court, seeking a declaratory judgment that the settlement agreement assigned to Bayer the cost of contributing to the common-benefit fund. *Riceland Foods, Inc. v. Bayer CropScience LP*, No. CV-2015-072 ND (Ark. Cir. Ct. Arkansas Cty. filed June 30, 2015).[3]

II.

This issues presented on appeal can be distilled into three principal questions. First, Bayer and Riceland both argue that the order requiring Bayer to hold back a portion of the settlement should be vacated because the district court lacked jurisdiction to apply the Common Benefit Order to their settlement. Downing and Levitt, on behalf of the plaintiffs' leadership group, maintain that the district court properly exercised jurisdiction over these parties. Next, even if the district court had

---

[3]Bayer's motion for the court to take judicial notice of the state declaratory-judgment action is granted. *See* Fed. R. Evid. 201(b)(2), (d); *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007). Bayer's motion to strike Parts I and II of the plaintiffs' leadership group's reply brief is denied.

jurisdiction to order an allocation of funds from the settlement, Bayer and Riceland argue that the amount ordered here was too large. Finally, if the court properly required a payment, the parties dispute whether Bayer or Riceland should be required to deposit money into the common-benefit fund. Bayer and Riceland each argue that the other should be required to pay. The leadership group contends that the district court's order was correct as entered, but argues alternatively that Riceland should be required to pay if Bayer is not.

A.

Bayer and Riceland argue that the district court lacked jurisdiction to order a contribution to the common-benefit fund. They contend that the order conflicts with this court's decision in *Rice I*.

In *Rice I*, the plaintiffs' leadership group appealed the district court's conclusion that it lacked jurisdiction to apply the Common Benefit Order to plaintiffs who recovered damages from Bayer in state court. 764 F.3d at 873-74. State-court-only plaintiffs, the leadership group argued, benefited from the common-benefit work and would be unjustly enriched unless the Common Benefit Order was applied to them as well. *Id.* at 874. While recognizing the potential inequities involved, we agreed with the district court that it lacked jurisdiction over plaintiffs that were not in federal court. *Id.*; *accord In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992); *Hartland v. Alaska Airlines*, 544 F.2d 992, 994, 996, 1001-02 (9th Cir. 1976). Bayer and Riceland now argue that *Rice I* precluded the district court from ordering an allocation from their settlement, because the settlement was the product of negotiations during the appeal of a state-court judgment.

*Rice I* does not control this case, because Riceland and Bayer were parties to multiple federal lawsuits before the district court at the time of settlement. Unlike the

-10-

state-court-only plaintiffs in *Rice I*, Riceland pursued its claims against Bayer in both state and federal court. Applying the Common Benefit Order to the state-court-only plaintiffs in *Rice I* would have required the federal court to exercise authority over parties that never appeared in federal court. Riceland, by contrast, "voluntarily entered the litigation" and sought a federal forum by filing a federal complaint and asserting third-party claims in the consolidated federal proceedings. *Showa Denko*, 953 F.2d at 166. The district court therefore had jurisdiction to enter any orders regarding Riceland that are consistent with the authority of a transferee court in centralized multidistrict litigation.

No party challenges the propriety of the Common Benefit Order or the "well established" authority of a district court to compensate leadership lawyers by ordering funds to be set aside from recoveries obtained by other plaintiffs in multidistrict litigation. *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992). The Common Benefit Order required Bayer to hold back amounts "related to each federal genetically modified rice case." The Bayer-Riceland settlement released "any and all claims" of Riceland against Bayer, including Riceland's claims in the federal cases. As a payment in consideration for resolving all of Riceland's claims, including those in federal cases, the settlement amount thus "related to" a federal genetically modified rice case within the meaning of the order.

Bayer and Riceland attempt to narrow the scope of the settlement to exclude the claims asserted in Riceland's federal complaint and cross-claims. Riceland argues that the settlement's release clause "expressly—and only—applies to *Meins*." This argument is belied by the plain language of the settlement agreement, which states that the release "includes, *but is not limited to*," the claims asserted in *Meins*. The agreement expressly disclaims that it applies only to *Meins*.

Bayer advances the more nuanced argument that even if the terms of the agreement could be interpreted as relating to the federal case, the parties clearly

intended to exclude the "worthless" federal lawsuit. Bayer contends that in light of the jury verdict in *Meins*, it could have secured dismissal of Riceland's federal lawsuit under the doctrine of claim preclusion. *See Crockett & Brown, P.A. v. Wilson*, 864 S.W.2d 244, 246 (Ark. 1993) (holding that a judgment has preclusive effect even while on appeal). Bayer argues that it would be illogical to interpret the agreement as settling a case with *de minimis* settlement value.

That Bayer might have resolved or defeated Riceland's federal claims in a different way, however, does not alter the plain terms of the settlement agreement. Bayer and Riceland opted for a release that "includes, but is not limited to" *Meins* and extends to "any and all claims." "The term 'any and all' . . . is all-encompassing" and includes Riceland's federal claims against Bayer. *See Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 716 (8th Cir. 2003).

Bayer might have eschewed such broad language and instead relied on the doctrine of claim preclusion to defeat other claims—federal and state—arising from the presence of Bayer genetically modified rice in the U.S. rice supply. But Bayer's proposed interpretation of the settlement agreement—excluding supposedly "worthless" claims arising from the same nucleus of operative facts—would mean that the agreement was in fact "limited to" *Meins* when the agreement said precisely the opposite. If the parties wanted to resolve only the *Meins* lawsuit, and to leave Riceland's federal claims open for resolution outside the agreement, then they could have drafted the settlement agreement more narrowly. The district court did not err by refusing to vary the terms of the written agreement. *See Hurt-Hoover Invs., LLC v. Fulmer*, 448 S.W.3d 696, 703 (Ark. 2014).

Bayer also asserts that Riceland's federal lawsuit was "never litigated," but this too would not be a reason to ignore the agreement's resolution of "any and all claims." In any event, there was important litigation relating to Riceland's federal claim. One month after Riceland filed its federal lawsuit, Bayer moved for partial

summary judgment on all non-producer claims based on the preemptive effect of the Plant Protection Act, 7 U.S.C. § 7756(a). If Bayer had prevailed on its motion for summary judgment, then all of Riceland's claims would have failed, but the leadership group successfully defeated Bayer's motion. The leadership group also obtained summary judgment on several of the affirmative defenses that Bayer asserted against Riceland, and it obtained extensive discovery materials that benefitted all plaintiffs. So while Riceland itself may have done little *individually* to litigate its federal claim, litigation on its behalf in the consolidated multidistrict proceedings did benefit Riceland's claims.

Riceland takes a different tack, arguing that the federal case was moot once the parties settled, and that the district court thus lacked jurisdiction over the federal case when it ordered Bayer to cause a deposit into the common-benefit fund. Riceland's argument effectively concedes that the settlement agreement encompassed the federal claims. But while Riceland may be correct that the settlement mooted its federal lawsuit, the district court retained jurisdiction to resolve outstanding collateral matters, such as attorney fees. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). Application of the Common Benefit Order was a comparable collateral matter that the district court had jurisdiction to resolve in light of the settlement.

B.

Bayer and Riceland argue alternatively that even if the federal lawsuits gave the district court authority to order an allocation from the settlement, the amount ordered here was too large. Bayer contends that the court was required to apportion the amount between the federal and state cases, and to limit the order to an amount that "constituted a federal-court recovery." Riceland similarly argues that the court erroneously "ascribed 100% of the value of the settlement to a defunct federal case."

-13-

If the district court were required to assess the relative value of Riceland's federal and state lawsuits, then it would apply Arkansas state contract law to make that determination. *See Amana Refrigeration, Inc. v. Pidgeon's Furniture & Appliance Stores, Inc.*, 883 F.2d 657, 658 (8th Cir. 1989). But there is a first-order question here: whether the court was required to make an apportionment at all. That is not a question of state contract law but a question of federal law concerning the scope of a district court's authority in overseeing multidistrict litigation.

The equitable common-benefit doctrine permits a district court to redistribute costs among plaintiffs when "the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 264 n.39 (1975); *In re Diet Drugs*, 582 F.3d 524, 546-47 (3d Cir. 2009); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1017-18 (5th Cir. 1977). The district court found that the plaintiffs' leadership group here conferred a substantial benefit on Riceland. Riceland was before the district court as a plaintiff, cross-claimant, or third-party claimant in at least seven federal cases. The district court had subject-matter jurisdiction over these federal actions. This jurisdiction was a sufficient basis for the court to exercise its equitable and managerial authority to prevent Riceland from freeriding on the work of the leadership group.

There is no separate requirement that the court also have jurisdiction over the corpus of the settlement, as though this were a quasi-*in rem* proceeding. The district court here chose to use amount of recovery as a proxy for the benefit conferred on individual plaintiffs, but the court could have assessed a flat fee or used some other measure. *See Showa Denko*, 953 F.2d at 164; *cf. Mills*, 396 U.S. at 392, 394. The key point is that Riceland was enriched by the work of the plaintiffs' leadership counsel,

and Riceland's participation in federal litigation gave the district court authority to order the setting aside of funds recovered from Bayer to prevent unjust enrichment of Riceland.

Riceland complains that the district court failed to consider its unique role as both a plaintiff and a defendant. The company says that it was denied access to some discovery material and forced to expend its own resources defending against litigation by the plaintiffs' leadership group. For these reasons, Riceland contends that the district court should have analyzed whether the ten percent holdback is inequitable as applied to Riceland. Riceland, however, did not object to entry of the Common Benefit Order. The district court, moreover, concluded that Riceland substantially benefited from the work of the leadership group, relying on its earlier finding that "the leadership group's work in discovery, motion practice, and the bellwether trials has provided a foundation for all cases involved in the litigation." That Riceland supplemented this foundation does not disprove or diminish the benefit it derived from coordinate pretrial litigation. Regarding Riceland specifically, the court noted that the leadership group mounted a successful defense on the preemption issue, and that Riceland's own attorney sought reimbursement from the common-benefit fund, thus suggesting coordination with other plaintiffs' counsel. Given the substantial deference owed to the district court, we cannot say the court committed an abuse of discretion by concluding that Riceland should be subject to the same set-aside requirement as other parties who recover from Bayer.

The Bayer-Riceland settlement was the culmination of an extensive effort by Riceland to assert its claims against Bayer in over a half dozen lawsuits in both state and federal court. The settlement "related to" and resolved Riceland's federal claims. The district court therefore properly applied the Common Benefit Order to the settlement and required a percentage of the entire settlement to be redirected to the common-benefit fund.

## C.

Having determined that the district court properly applied the Common Benefit Order to the Bayer-Riceland settlement, we now must address whether the district court properly ordered Bayer to "caused to be deposited" ten percent of the settlement into the common-benefit fund. Bayer contends that because it already paid the settlement amount to Riceland, the district court effectively compelled it to cover Riceland's litigation expenses. Such an order, Bayer argues, violates the American Rule, which prohibits federal courts from shifting the costs of litigation between adverse parties without statutory authority or a contract between the parties. *Walitalo*, 968 F.2d at 747. Bayer did not present this argument to the district court, so we review for plain error. *See Wiser v. Wayne Farms*, 411 F.3d 923, 927 (8th Cir. 2005).

Citing *Universal Title Insurance Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991), Bayer argues that we have discretion to consider a purely legal issue for the first time on appeal, and that plain-error review should not apply. But the two propositions are not necessarily inconsistent. If the resolution of a purely legal issue is "beyond any doubt," *see Wiser*, 411 F.3d at 927, then the plain-error standard may well be satisfied. In any event, *Universal Title* merely recognized the court's *discretion* to consider certain issues for the first time on appeal. 942 F.2d at 1314. We disagree with Bayer that it is entitled to more searching appellate review of a forfeited error than a criminal defendant challenging a conviction or term of imprisonment. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

Bayer contends that the authority conferred under 28 U.S.C. § 1407, which authorizes consolidated pretrial proceedings in multidistrict litigation, is "merely procedural" and does not give the district court authority to enter a fee-shifting award. *Rice I*, 764 F.3d at 873-74 (quoting *Showa Denko*, 953 F.2d at 165). The district court, however, did not order Bayer to pay attorney fees. It ordered Bayer to comply

with the Common Benefit Order and "cause to be deposited" a portion of the settlement into the fund. Bayer has never objected to its assigned role of holding back portions of recoveries. That Bayer opted to pay Riceland before clarifying its obligations under the Common Benefit Order did not convert enforcement of the order into an impermissible fee award.

Although Bayer is required under the order to cause a deposit into the common-benefit fund, the order does not mean that the district court has shifted the ultimate burden to finance Riceland's litigation. The parties are disputing in state court whether the settlement agreement assigned to Bayer the cost of complying with the Common Benefit Order. *Riceland Foods, Inc. v. Bayer Cropscience LP*, No. CV-2015-072 ND (Ark. Cir. Ct. Arkansas Cty. filed June 30, 2015). If Bayer assumed liability for the common-benefit fee by contract, that agreement would be a permissible form of fee shifting under the American Rule. *See Walitalo*, 968 F.2d at 747. Bayer also has not disclaimed an ability to seek contribution or indemnification from Riceland, and the district court's carefully worded order allowed Bayer to "cause" Riceland to make the deposit if Bayer had a legal basis to do so. We therefore find no plain error in the district court's order assigning to Bayer the duty of causing a deposit of the funds due under the Common Benefit Order.

\* \* \*

The big picture here is that Riceland was enriched by the work of the plaintiffs' leadership group. The district court had authority to prevent unjust enrichment of federal-court plaintiffs through the administration of a common-benefit fund. We concluded in *Rice I* that where a party proceeded against Bayer exclusively in state court, the district court lacked jurisdiction to apply the Common Benefit Order to recoveries obtained in the state-court litigation. As a consequence, some plaintiffs proceeding exclusively in state court would be unjustly enriched by the work of the plaintiffs' leadership group. Where, however, a plaintiff who benefited from this

work chose to litigate against Bayer in both federal and state court, and to resolve its claims in a global settlement, the district court was not required to make the loophole larger. Application of the Common Benefit Order to the Bayer-Riceland settlement was a proper exercise of the equitable common-benefit doctrine. The judgment of the district court is affirmed.

_____